My rather unusual situation that for whatever reason the defendants in this case which include the state of California, is that correct? Yes. Have chosen not to file a brief and not to appear. Actually, I'm sorry, they include state of California officials, not the state, right. And the Attorney General represented the parties before Judge Wilken? Yes. But they didn't file a brief for an appearance here? They did not. And I'm opposed by that. I would like you to know I spoke with counsel on that, and I was trying to see when my reply brief was due. And they told me, oh, we don't have to oppose that. And I thought, well, okay, I didn't really get that. They didn't tell me why. I mean, there's a judgment. It's been appealed. It seems to me they should have to oppose it. So I don't know why they're not here or not opposing it. It's kind of odd. There may be some questions from the panel, but do you have anything you want to add to your briefs? If I may. First of all, I'd like to bring the Court's awareness to the fact that there's a motion pending as well to reconsider an order. We needed to augment this file to bring in case materials from another case, and they're connected. And we first did a motion to augment, which was denied on the basis that they're different cases. I then wrote a motion to reconsider, and I explained, actually, they're connected. And I showed that. And the result of that motion was they were going to let it, let the merits panel, which is you, decide that issue. So I just want to remind the Court we did do that. I have my motion here, but you may not have it up there. But all it does is it connects up some of the substantive decisions and motions from one case that were relied on in the other. And I hate to sound confusing about it, but that's why I needed the other one in here. What happened was the Court in this case number, the trial court number was 013921, stated in its order dismissing it for the reasons stated in my other order in the other case. And I have a site where the Court did that. I think it's CT230. CT240. I don't think that motion has reached the panel yet. Very well. Anyway, that's kind of one of the reasons I wanted to mention it now, just so you know that that's out there. I realize you're not used to having motions on the day of our hearing. So the other thing I would like to point out that I find to be sort of the central point of this that we would argue is the trial court's decision stated, I don't think the intent of the attorney's general's office and the defendant's was to settle case A and then still get sued for case B, which, you know, ordinarily in settlements, of course, you do a universal settlement, and that normally makes sense. The trial court did make that finding, and I would just submit that under the case law we cited, J.F.D. v. Andrus, you apply contract principles to the settlement agreement. The settlement agreement, which I personally was involved in, my declaration is in here as well on that issue, I filed that with the motion, it actually states that it applies to this case, not, because there were not, there were multiple after cases. It is true, as the trial court says, that they're related in a sense of the same kind of events. He had a bad wrist. They weren't taking care of it. There were things he wanted them to do. But the ---- Ginsburg, for example, counsel, on the Payne issue, it seemed to me that it was completely settled in the settlement agreement by saying he would go to the Davis Clinic and that the prison would follow through with whatever recommendations were made. And they've got the same thing in this case, and it was filed before that other settlement. So it doesn't make sense to suggest that that wasn't disposed of. Let me ---- it is the same Payne. There's no question about that. Let me tell you what the difference is. It's a different time segment. If you can look at his odysseys in a segment of time, he had a specific segment of time that he sued for in the first case, the pain and suffering that he suffered because they did not take care of his arm. Then when that case is pending, it takes a long time, you know, it's going along several years, there are more transgressions. He files another case, similar transgressions, different period of time. Now, the ---- But they all happened before the settlement agreement. The second case was pending before the settlement. That's why we put this case. That's exactly why we said that in there. It was not to settle the other case. Did the Court consolidate the cases? There was a motion that was denied to do that. The reason, given that it was filed just prior to the other case going to trial. And the Court says, look, this one's ready to file. You want to bring in this whole new fact scenario, although it was similar, it's just a different time period. But that was denied. So they were not. And that's how we got this separate, kind of separateness of it. So I would just like to point out what the damage claim that wasn't ---- it is true that the payment problem got solved by our agreement, you know, on a going forward basis. You know, he was sent to UC Davis. They did do all that stuff. There was actually some ---- it was a rocky road getting there, but we got there. And the good news is it did kind of solve that. But there's a whole segment of time that that didn't undo. You know, that was a historical fact. I would just like to say that, you know, it's a contract issue. You read the contract. If it ---- you know, parole evidence rule, we all know that rule. If the contract is not ambiguous, you don't step behind it and try to wonder about the party's intentions. You just read it, and you ---- it says what it says, the ordinary language rule. That's actually an issue of California law, just State law. And the question is, on the contract, it's at CT-77, page 2, there's a handwritten note in this case. And that was initialed by myself and the involved attorney general. Ginsburg-McGill. But, counsel, then you go on with other language after that. Without limitation, any and all known or unknown claims for bodily and personal injuries to release, or any future claims of the remiss or, et cetera, which have resulted or may result from the alleged acts and omissions. It does say that. And my position is that we limited all that language to this case only. And they ---- we both signed that with that understanding. Kennedy. Does only appear in the interlineation? It's just in this case. That's the language. I ---- Let me ask you this question. If ---- and this is a hypothetical question, not meant to say these are the facts. But if the State lived up to the every I, every T, every requirement of it in the settlement agreement, would that not subsume the later claims? Well, the reason it wouldn't is because there's still a time period that he suffered damages for that he would not have received. See, that 37-5, the monetary thing, was for his suffering during a period. And then the other case was for a different period. So this didn't take care of that suffering. It made a mechanism to make it so it wouldn't happen again going forward. So I'm just saying that that chronology is such that there's a whole segment of time where they violated his rights and he did not get his day in court on it. I would also like to point out to the panel that the ---- interestingly, when they did the motion, they did not file the declaration of the attorney general deputy that was with me on that case and signed this agreement. I don't know why they didn't do it. But if we're going to get into issues of intent, Gregory Walston was his name. He and I worked this thing out. You know, a lot of work on that, but it resolved. You know, that was a good thing. When they file their motion, they file it with another attorney general who had nothing to do with that case and just kind of authenticated the agreement. I didn't really disagree that that was the agreement. But to the extent the Court wants to go behind the four corners of the document and look at the party's intent, the evidence was my declaration explaining we wrote in this case meaning this case and not any other case, and they don't really have anything coming back at that. They don't say, oh, no, that's not true. I remember this, you know, Mr. Frank, I was talking to you and we said all cases. They don't really have that. What they have so I would first say we shouldn't go behind the four corners of the document. We should just look at the document, read the plain language, and apply it. That would be my first position. But if you are going to do that, then the state of the evidence is only my declaration and nothing really from their side because the person that submitted was a total nonwitness to that settlement. I've got my yellow light on, so I'd better wrap up. Anyway, it's just a State law contract issue of contract interpretation. Thank you. Roberts, thank you for coming in today. The case just argued will be submitted for decision.
judges: B. Fletcher, Siler , Hawkins